22-mj-7348-JCB

## AFFIDAVIT OF U.S. POSTAL INSPECTION
## TASK FORCE OFFICER DENNIS M. LYNCH

I, Dennis M. Lynch, being duly sworn, depose and state as follows:

1. I am a Massachusetts State Trooper presently assigned to the United States Postal Inspection Service ("USPIS") and have been so assigned since October 2020. I am also a duly sworn Task Force Officer (TFO) with USPIS with investigative powers of Postal Service personnel, pursuant to Title 18 U.S. Code § 3061 as well as 39 C.F.R § 233.1 and USPS Administrative Support Manual § 2. I have attended and completed the USPIS Task Force Contraband, Interdiction, and Investigations Course in February 2021. I have the authority to enforce the criminal laws of the United States and to make arrests. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. I have been employed by the Massachusetts State Police (MSP) since April of 2006. After completing the State Police Academy in September of 2006, I was assigned to the Division of Field Services as a uniformed patrol officer. While serving in this capacity, I have previously been assigned to the Massachusetts State Police Framingham Barracks, Massachusetts State Police Newbury Barracks, Massachusetts State Police Bourne Barracks, Massachusetts State Police Norwell Barracks, and the Massachusetts State Police Milton Barracks. In February 2013, I was assigned to the narcotics section of the Norfolk County District Attorney's Office. During my time as a State Police Trooper, I have initiated and or participated in numerous investigations which have resulted in the arrest and conviction of individuals for various forms of criminal activity including, but not limited to, narcotics related offenses. Many of these investigations resulted in

the seizure of controlled substances, weapons, stolen property, and other evidence of criminal activity. More specifically, I have made hundreds of arrests for violations of the Controlled Substances Act.

3. I have received specialized training in the investigation, identification, and illegal distribution of controlled substances. This training included the recognition of various controlled substances. Additionally, I have received training and attended numerous seminars instructed by members of various local, state, and federal law enforcement agencies. This instruction has included, but is not limited to, High Intensity Drug Trafficking Area: Highway Vehicle Stops and The Drug Trafficker Course as well as the Pro-Active Criminal Enforcement Seminar. These trainings included courses on surveillance, courtroom testimony, hidden vehicle compartment recognition, money laundering, as well as instruction and training on the weapons, methods, and operations utilized by drug traffickers and other organized criminal enterprises. Additionally, I have worked with other experienced local, state, and federal narcotics investigators.

4. As a TFO with the Postal Inspection Service assigned to the Contraband Interdiction and Investigations ("CI2") Team, my duties and responsibilities include, but are not limited to, the investigation of the illegal shipment of controlled substances and the proceeds from the sale of controlled substances, as well as the laundering of drug proceeds via the United States Postal Service ("USPS"). I have participated in the interception of more than 50 mailed parcels that were found to have contained controlled substances or the proceeds from the sale of controlled substances. I have participated in numerous investigations involving the transportation of controlled substances or proceeds from the sales of (or payments for) controlled substances through the USPS, money laundering, and related crimes. Many of these investigations have had national or international connections and many required me to work closely and share information

and intelligence with members of other law enforcement agencies, including the Drug Enforcement Administration ("DEA"), Homeland Security Investigations ("HSI"), and the Massachusetts State Police ("MSP"). I have participated in the debriefing of various individuals who either participated in, or had personal knowledge concerning, the sale and distribution of narcotics, money laundering, and related crimes occurring in Massachusetts and nationally.

## Purpose of this Affidavit

5. This affidavit is made in support of an application for search warrants for two USPS Priority Mail packages, hereafter the "SUBJECT PACKAGES." The two SUBJECT PACKAGES are identified and described in greater detail below. A full description of the two SUBJECT PACKAGES and photographs thereof are in Attachments A-1 and A-2, which is incorporated herein by reference. The SUBJECT PACKAGES are currently in the possession of the USPIS and are secured at the Braintree Detached Mail Unit ("DMU"), located at 333 Commerce Drive, Braintree, Massachusetts 02184.

6. For the reasons set forth in this affidavit, I submit that probable cause exists to believe that the two SUBJECT PACKAGES contain evidence of the following offenses: (a) possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); (b) use of a communications facility in the commission of controlled substances trafficking offenses, in violation of 21 U.S.C. § 843(b); and (c) conspiracy to possess with intent to distribute and distribute controlled substances, in violation of 21 U.S.C. § 846 (together, "the Target Offenses").

7. The information contained in this affidavit is based on information I have gained from my investigation, my personal observations, my training and experience, and information relayed to me by other law enforcement officers and agents. Because this affidavit is being

submitted for the limited purpose of securing warrants to search the two SUBJECT PACKAGES, I have not included every fact that I know about this investigation. This affidavit only sets forth sufficient facts to demonstrate probable cause for the requested warrant.

### General Background Concerning the Shipment of Drugs and Drug Sale Proceeds Through the U.S. Mail

8. Experience and drug trafficking intelligence information gathered by the USPIS have demonstrated that USPS Priority Mail Express and Priority Mail frequently are used by drug traffickers for shipping drugs and the proceeds from drug sales. Use of Priority Mail Express and Priority Mail are favored because of the speed, reliability, free telephone and Internet package tracking service, as well as the perceived minimal chance of detection.

9. Through previous investigations conducted by Postal Inspectors, including investigations that I personally have conducted or participated in, I have become aware that Puerto Rico is known to be a source location for controlled substances that commonly are distributed via the USPS.

10. The USPIS has conducted an analysis of prior packages that were found to contain drugs and drug proceeds. The analysis of prior packages that were found to contain drugs or drug proceeds indicated that these packages usually were sent from an individual to an individual. In the few cases when Priority Mail Express or Priority Mail packages containing drugs or drug proceeds displayed a business or company name, it usually was proven to be a fictitious business or company, or, in certain cases, a legitimate company whose name was being used without the knowledge or authorization of that business.

11. Additionally, this analysis established a series of package characteristics which, when a package is found with a combination of two or more characteristics described below, have shown high probability that the package will contain a controlled substance or the proceeds of

controlled substance sales. These characteristics include the following: (1) the package was mailed from and/or sent to a narcotic source location; (2) the package has a fictitious return/sender address or name; (3) the package has address information that is handwritten; (4) the handwritten mailing label on the package does not contain a business account number, thereby indicating that the sender paid cash; (5) the package is addressed from an individual to an individual; and (6) package is taped heavily.

12. Based on my training and experience and USPIS intelligence, I know that these package characteristics are indicative of packages sent either by Priority Mail Express or Priority Mail that have been found to contain illegal controlled substances and/or the proceeds from the sales of such controlled substances.

### Identification of the SUBJECT PACKAGES

**SUBJECT PACKAGE 1**

13. SUBJECT PACKAGE 1 bears tracking number 9505 5114 5511 2295 2829 76, and weighs 3 pounds 10 ounces. SUBJECT PACKAGE 1 is a Priority Mail Medium Flat Rate Box, measuring approximately 11.25 inches long, 8.75 inches wide, and 6 inches thick. SUBJECT PACKAGE 1 has a handwritten label, and postage was paid in cash. SUBJECT PACKAGE 1 is addressed to "ALLAN GUZMAN VELEZ, 5 WEST MINSTER TER APT. 3, ROXBURY MA 02119" and bears a return address of "HECTOR VAZQUEZ, URB. MONTE VERDE, J6 CALLE 8, TOA ALTA P.R. 00953." SUBJECT PACKAGE 1 was shipped from a postal facility in Toa Alta, Puerto Rico, on October 22, 2022, to an address in Roxbury, Massachusetts.

14. On October 25, 2022, I conducted an internet query of the sender information using the online database known as CLEAR. CLEAR is an investigative platform that searches proprietary sources and public records to obtain information on individuals and businesses. Using

CLEAR, I was able to verify that the sender address on SUBJECT PACKAGE 1, "URB. MONTE VERDE, J6 CALLE 8, TOA ALTA P.R. 00953" is a valid mailing address. However, "HECTOR VAZQUEZ" does not appear to be associated with that address. I know through my experience, and through my discussions with other drug investigators, that people who mail controlled substances or proceeds from the sale of controlled substances often use a fictitious name and/or return address in an attempt to avoid the attention of law enforcement.

15. SUBJECT PACKAGE 1 is addressed to "ALLAN GUZMAN VELEZ, 5 WEST MINSTER TER APT. 3, ROXBURY MA 02119." Again, using CLEAR, I researched this recipient name and address. CLEAR indicates that the mailing address, "5 WEST MINSTER TER APT. 3", in Roxbury, Massachusetts, is a valid address. However, the name, "ALLAN GUZMAN VELEZ," does not appear to be associated with that address. I know from experience, and through my discussions with other drug investigators, that individuals will often list incorrect information as the recipient's name and/or address in order to provide the recipient with plausible deniability should law enforcement discover that a package enroute for delivery contains controlled substances or other contraband.

**SUBJECT PACKAGE 2**

16. SUBJECT PACKAGE 2 bears tracking number 9505 5114 5511 2295 2829 83, and weighs approximately 3 pounds 7 ounces. SUBJECT PACKAGE 2 is a Priority Mail Medium Flat Rate Box, measuring approximately 12 inches long, 14.125 inches wide, and 3.5 inches thick. SUBJECT PACKAGE 2 has a handwritten label, and postage was paid for in cash. SUBJECT PACKAGE 2 is addressed to "ALLAN GUZMAN VELEZ, 5 WEST MINSTER TER APT.3, ROXBURY MA 02119" and bears a return address of "HECTOR VAZQUEZ, URB. MONTE VERDE, J6 CALLE 8, TOA ALTA P.R. 00953". SUBJECT PACKAGE 2 was shipped from a

6

postal facility in Toa Alta, Puerto Rico, on October 22, 2022, to an address in Roxbury, Massachusetts.

17. The label information identifying the sender and receiver on SUBJECT PACKAGE 2 is identical to the sender and receiver information on SUBJECT PACKAGE 1. Again, I know through my experience, and through my discussions with other drug investigators, that people who mail controlled substances or proceeds from the sale of controlled substances often use a fictitious name and/or return address in an attempt to avoid the attention of law enforcement. Also, I know from experience, and through my discussions with other drug investigators, that individuals will often list incorrect information as the recipient's name and/or address in order to provide the recipient with plausible deniability should law enforcement discover that a package enroute for delivery contains controlled substances or other contraband.

18. Based upon both the USPIS analysis described above and my own training and experience, I know that when a package bears an apparently fictitious sender and/or addressee name, has a handwritten label, is mailed from a known drug source area, and has postage that is paid for in cash, there is a strong likelihood that the package contains controlled substances or the proceeds from the sale of controlled substances.

### Canine Positive Response to the SUBJECT PACKAGE

19. On October 27, 2022, at approximately 1:30 p.m., I contacted Officer Paul Foley of the Quincy, Massachusetts Police Department and requested he and his narcotic-trained canine Charlie review the two SUBJECT PACKAGES for the scent of controlled substances.[1] I arranged

---

[1] A positive alert on a package by a canine certified in the detection of controlled substances can provide probable cause for the issuance of a warrant to search the package. See United States v. Allen, 990 F.2d 667, 671 n.1 (1st Cir. 1993).

7

to meet Officer Foley at the Braintree Detached Mail Unit ("DMU"), located at 333 Commerce Drive, Braintree, Massachusetts.

20. Officer Foley has been employed with the Quincy Police Department for twenty-one years and has been assigned to the canine unit for the last fourteen years. Officer Foley advised that Charlie is an eight-year-old Labrador Retriever and is classified as a passive alert, single purpose, contraband drug detection police dog. Officer Foley uses Charlie to detect controlled substances in different situations, including within sealed packages shipped through the United States mail and other courier services. Officer Foley stated Charlie successfully completed 250 hours of contraband drug detection training and certification at Tarheel Canine in North Carolina before Charlie was purchased by and delivered to the Quincy Police Department in 2015. Officer Foley and Charlie successfully completed an 80-hour canine training program together with the Plymouth County Sheriff's Department Canine Training Unit. Charlie was most recently certified on July 22, 2022, by the Boston Police Canine Training Unit, and this certification, among others, is still in effect. Charlie is certified to detect the presence of narcotic odors, including but not limited to, cocaine, heroin, and methamphetamine and their derivatives including synthetic and semi-synthetic forms of opiates, including fentanyl. Charlie was never trained to detect the odors of marijuana or its derivatives. Charlie is regularly proofed off of the legal odors of circulated and non-circulated US currency, numerous legal cutting agents, as well as many other distracter odors.

21. Officer Foley advised that Charlie is a toy-rewarded drive dog, which means that he is rewarded only when he finds the target odor (narcotic odor). Since 2015, Officer Foley and Charlie have also maintained their required 16 hours of monthly canine in-service training and certification through the Boston Police Canine Training Unit, the Quincy Police Canine Training Unit, the North American Police Work Dog Association ("NAPWDA"), and the United States

Police Canine Association ("USPCA"), or some combination of the four training associations. Prior to being partnered with Charlie, Officer Foley received over 2,400 hours of canine handler training and certification with his previous Patrol/Explosive detection canine partner Rex through the Boston Police Canine Training Unit, USPCA, and NAPWDA. Since Officer Foley was partnered with Charlie in 2015, the two have received over 1,300 hours of combined canine training and certification together. In addition, Officer Foley has a combined total of over 4,500 hours of canine handler experience in the field since 2008. Officer Foley advised that Charlie has been responsible for the seizure of packages containing various drugs, including cocaine, and methamphetamine, and that he is a well-trained and reliable canine.

22. Officer Foley and Charlie arrived at the DMU at approximately 2:10 p.m. to review the two SUBJECT PACKAGES. Shortly after their arrival, at approximately 2:15 p.m., Officer Foley and Charlie conducted an examination of SUBJECT PACKAGE 1 inside the DMU, in an area known to be free from contamination by narcotic odors. Six boxed packages were placed in a straight line; five were controlled packages and one was SUBJECT PACKAGE 1. Officer Foley advised that upon arriving at SUBJECT PACKAGE 1, Charlie reacted in a manner that indicated the presence of a narcotic odor. No further indications were observed in the search area.

23. At approximately 2:20 p.m., Officer Foley and Charlie conducted an examination of SUBJECT PACKAGE 2 inside the DMU, in an area known to be free from contamination by narcotic odors. Six boxed packages were placed in a straight line; five were controlled packages and one was SUBJECT PACKAGE 2. Officer Foley advised that upon arriving at SUBJECT PACKAGE 2, Charlie reacted in a manner that indicated the presence of a narcotic odor. No further indications were observed in the search area.

24. Based on my training and experience, I believe that a positive alert by a certified drug-detection canine means that there is probable cause to believe that the contents of the two SUBJECT PACKAGES are controlled substances or that the contents recently were in close proximity to controlled substances.

## Conclusion

25. Based on the facts described above, I believe that there is probable cause to believe that the two SUBJECT PACKAGES, as described in Attachments A-1 and A-2, contain controlled substances, cash, money orders, or other documents relevant to drug trafficking as set forth in Attachment B which would constitute evidence of the Target Offenses. Accordingly, I respectfully request that this Court issue the requested search warrants authorizing the search of the two SUBJECT PACKAGES for the items described in Attachment B.



Dennis M. Lynch
USPIS Task Force Officer

Subscribed to and sworn via telephone
in accordance with Fed. R. Crim. P. 4.1
on this the 28th day of October 2022.

Hon. Jennifer C. Boal
United States Magistrate Judge